UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JOSEPH M. KOZAK, | ) | CASE NO. 18-60076-PMB |
| | ) | |
| Debtor. | ) | JUDGE PAUL BAISIER |
| | ) | |

--------------------------------------------------------------------------------

| | | |
|---|---|---|
| | ) | |
| WHITE COLUMNS COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | <u>CONTESTED MATTER</u> |
| | ) | |
| JOSEPH M. KOZAK and | ) | |
| ROBERT TRAUNER (as Trustee), | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that White Columns Community Association, Inc. ("Movant") has filed a *Motion for Relief from Stay* and related papers with the Court seeking an order stating that the automatic stay pursuant to 11 U.S.C. § 362 shall be modified to permit Movant to permit Movant to enforce all land covenants, including proceeding with foreclosure of Movant's statutory lien by way of initiating or continuing a judicial foreclosure action in the state court system.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the *Motion for Relief from Stay* in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia, 30303 at 1:30 P.M. on October 1, 2018.

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you

file a written response, you must attach a certificate stating when, how, and on whom (including addresses) you served the response.  Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing.  The address of the Clerk's Office is:

> Clerk, U.S. Bankruptcy Court
> 75 Ted Turner Drive, Suite 1340
> Atlanta, GA  30303

You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion for Relief from the Automatic Stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the Motion and agrees to a hearing on the earliest possible date.  Movant consents to the Automatic Stay remaining in effect until the Court orders otherwise.

> Respectfully submitted, this 22nd day of August, 2018.

> LUEDER, LARKIN & HUNTER, LLC

> By:  ___/s/  Daniel E. Melchi_____
> Daniel E. Melchi
> Georgia Bar No. 501187
> Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JOSEPH M. KOZAK, | ) | CASE NO. 18-60076-PMB |
| | ) | |
| Debtor. | ) | JUDGE PAUL BAISIER |
| | ) | |

---

| | | |
|---|---|---|
| | ) | |
| WHITE COLUMNS COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | CONTESTED MATTER |
| | ) | |
| JOSEPH M. KOZAK and | ) | |
| ROBERT TRAUNER (as Trustee), | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## MOTION FOR RELIEF FROM STAY

COMES NOW, White Columns Community Association, Inc. ("Movant"), by and through counsel, Lueder, Larkin & Hunter, LLC, and files this *Motion for Relief from Stay* seeking to have the stay of 11 U.S.C. § 362(a) lifted, modified, or terminated, stating as follows:

1.

On June 16, 2018, Debtor filed a Chapter 7 bankruptcy petition in this Court, creating the instant case herein.

2.

Debtor was, at the time of the Chapter 7 petition, and is now the owner of real property in White Columns community, the address being 723 Golf Vista Court, Alpharetta, Georgia, 30004 ("Property").

3.

As the owner of the Property, the Debtor is subject to all terms, conditions, and requirements of the duly recorded *Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns* ("Declaration") and the Georgia Property Owners' Association Act ("Act").  (Exhibit "A" and O.C.G.A. § 44-3-232(a)).

4.

Pursuant to the Declaration and the Act, Debtor is required to pay to Movant assessments as Debtor's share of the common expenses of maintenance of the Property and the operation of Movant, a non-profit corporation.  *Id.*

5.

Movant has a statutory lien on the Property due to non-payment of assessments totaling $2,810.22 as of August 22, 2018.  (Exhibits "B-1"[1], "B-2"[2], and "C"[3]).  Debtor's sworn Statement of Intention filed in in this case does not list Movant's name as a secured claim holder regarding the Property, and Debtor has made no effort to enter into a Reaffirmation Agreement with Movant.  Consequently, cause exists pursuant to 11 U.S.C. § 362(d)(1) for the stay to be lifted to allow Movant to exercise Movant's rights under state law to foreclose Movant's statutory lien on the Property.  Additional cause exists pursuant to 11 U.S.C. § 362(d)(1) because Debtor has not paid the post-petition amounts owed in the amount of $817.50.  (Exhibit "B-2").

---

[1] Pre-petition assessments (principal) and charges (including interest):  $843.72.
[2] Post-petition assessments (principal and charges (including interest):  $817.50.
[3] Post-petition attorney's fees:  $968.00; court costs:  $181.00.

6.

Movant has a statutory lien on the Property due to non-payment of assessments totaling $2,810.22 as of August 22, 2018. (Exhibits "B-1", "B-2", and "C"). Debtor's sworn Schedule A/B values Debtor's interest in the Property at $916,000.00. Debtor's sworn Schedule D lists the following secured creditors whose claims are secured by the Property:

1. Georgia Department of Revenue (listed three times, totaling): $99,523.37

2. Internal Revenue Service (listed two times, totaling): $191,000.00

3. JPMorgan Chase Bank, N.A.: $844,764.00

4. Real Time: $214,544.00

5. Movant: Whose lien is actually $2,810.22, less than the amount listed twice in Sections 2.10 and 2.11 of Schedule D.

A. Total Liens on Property, according to Debtor's sworn Schedules and corrected lien amount provided by Movant on Movant's lien: $1,352,641.50

B. Total share of Debtor's equity interest in the Property, per Debtor's sworn Schedules and corrected lien amount provided by Movant on Movant's lien: <$436,641.50>

Debtor asserts that there is no equity in the Property, according to Debtor's sworn Schedules A/B and D. The Property is not a benefit to the bankruptcy estate. This case is a Chapter 7 liquidation case, not a Chapter 11, Chapter 12, or Chapter 13 reorganization case. Consequently, cause exists pursuant to 11 U.S.C. § 362(d)(2) for the stay to be lifted to allow Movant to exercise Movant's rights under state law to foreclose the statutory lien on the Property.

7.

Additional information required by this Court:

a. Creditor is authorized under the Declaration and Act to enforce the provisions of the Declaration and Act, including the right to foreclose Creditor's statutory lien on the Property.

b. The amount of principal and interest owed as of the date of this Motion is alleged in Paragraphs 5 and 6 (above).

c. Debtor has missed approximately one pre-petition HOA assessment and one post-petition HOA assessment. The aggregate amounts are listed in Paragraphs 5 and 6 (above).

d. Debtor values the property at $916,000 on Debtor's sworn Schedule A. Creditor does not know the exact value of the Property because Creditor is a homeowners association's lien holder and not a real estate appraiser.

e. There is no other collateral supporting the debt Creditor seeks to foreclose upon.

f. Debtor lists liens totaling $1,352,641.50 which encumber the Property on Debtor's sworn Schedule D.

WHEREFORE, Movant moves that this Honorable Court ORDER:

(a) that the automatic stay pursuant to 11 U.S.C. § 362(a) be LIFTED, MODIFIED, or TERMINATED pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) to permit Movant to enforce all land covenants related to the Property, including proceeding with foreclosure of Movant's statutory lien by way of initiating or continuing a judicial foreclosure action in the state court system; and

(b) that the stay of F.R.B.P. 4001(a)(3) be WAIVED; and

(c) that any such further relief as the Court may deem just and proper be GRANTED.

Respectfully submitted, this 22nd day of August, 2018.

LUEDER, LARKIN & HUNTER, LLC

By:      /s/  Daniel E. Melchi
Daniel E. Melchi
Georgia Bar No. 501187
Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com

Seventh Supplementary / 25984/280

See 20423-231
See 21081-254
See 25470/318

EXHIBIT "A"

GEORGIA, FULTON COUNTY
FILED AND RECORDED

1994 NOV -1  PM 3 23

JUANITA HICKS
CLERK. SUPERIOR COURT

After recording please return
this document to PDTAP&W
230 Peachtree St.
Suite 1100
Atlanta, Ga. 30303

Cove 29963/105
COVE ATM 29474-79   UTM Supp 22428-174

MASTER DECLARATION OF PROTECTIVE
COVENANTS, CONDITIONS AND RESTRICTIONS
FOR
WHITE COLUMNS

#2  10/26/94

BOOK 18915 PAGE 200

## ARTICLE VIII
### MEMBERSHIP AND VOTING RIGHTS

8.01 <u>Classes of Membership and Voting Rights</u>. There shall be two classes of membership in the Association as follows:

(a) <u>Class "A" Membership</u>. Each Owner of a Lot, other than Declarant, shall be a Class "A" Member. Each Class "A" Member shall be entitled to one (1) vote for each Lot owned by the Member.

(b) <u>Class "B" Membership</u>. Declarant shall be a Class "B" Member until the Turnover Date, after which time Declarant shall be a Class "A" Member. The Class "B" Member shall be entitled to five (5) votes for each Lot owned by the Class "B" Member. After Declarant is converted to a Class "A" Member, it shall be entitled to one (1) vote for each Lot it owns. The Class "B" Member shall be entitled to appoint all of the members of the Board of Directors until the Turnover Date as specified in the By-Laws.

8.02 <u>Joint Ownership</u>. Voting rights may be exercised by a Member or the Member's spouse. In any situation where more than one Person holds an interest in a Lot, the vote for the respective Lot shall be exercised by any such Person; provided, however, the Persons holding the interest in the Lot can notify the Secretary of the Association, in writing, prior to or during any meeting of the manner in which the vote for the Lot is to be exercised and, in the absence of such notice, the Lot's vote shall be suspended if more than one Person seeks to exercise it. The voting rights of a Member that is a company or other form of entity ownership shall be exercised by the individual designated from time to time by the Owner in a written instrument provided to the Secretary.

8.03 <u>Turnover Date</u>. The Turnover Date shall occur within sixty (60) days of the occurrence of the earlier of the following conditions:

(a) the sale to persons other than Declarant or Builders of all of the Lots intended to be developed within the Property and the Additional Property;

(b) December 31, 2010; or

(c) such earlier date, as determined by the Class "B" Member, in its sole and absolute discretion.

## ARTICLE IX
### ASSESSMENTS

9.01 <u>Affirmative Covenant to Pay Assessments</u>. There is hereby imposed upon each Owner and each Lot, the affirmative covenant and obligation to pay to the Association all Assessments in respect of the Lot. Each Owner, by acceptance of a deed or other instrument of conveying title to a Lot, whether

BOOK 18915 PG 225

or not it is so expressed in such deed or instrument, shall be obligated and agrees to pay all Assessments, regardless of their nature, including, but not limited to, any then past due Assessments in accordance with the provisions of this Declaration and consents and agrees to the lien rights hereunder against the Lot. The liability for Assessments is personal to the Owner and may not be avoided by waiver of the use or enjoyment of Common Area or Exclusive Common Area, or by abandonment of the Lot for which the Assessments are made. Neither the liability for Assessments, nor the amount of Assessments, shall be reduced or avoided due to the fact that all or any portions of the Common Area, Exclusive Common Area or other portions of the Property are not completed. No diminution or abatement of assessment or set-off shall be claimed or allowed by reason of any alleged failure of the Association or the Board of Directors to take some action or perform some function required to be taken or performed by the Association or the Board of Directors under this Declaration or the Articles, or for inconvenience or discomfort arising from the making of repairs or improvements, or from any action taken to comply with any law or with any order or directive of any municipal or other governmental authority.

9.02    Creation of Assessments.    There are hereby created Assessments for expenses of the Association as the Board of Directors may authorize from time to time to be commenced at the time and in the manner set forth in Section 9.03 hereof. There shall be three (3) types of Assessments:

(a)    Common Assessments.    Common Assessments shall be levied equally on all Lots.

(b)    Neighborhood Assessments.    Neighborhood Assessments shall be levied equally on all Lots within the Neighborhood for whose benefit Neighborhood Expenses are incurred as provided in Section 9.05, below; and

(c)    Special Assessments.    Special Assessments shall be levied as provided in Section 9.06, below.

9.03    Payment of Assessments.    Assessments shall be paid in such manner and on such dates as may be fixed by the Board of Directors, which may include, without limitation, an acceleration of the annual Common Assessment and any Neighborhood Assessment for delinquents. Unless the Board of Directors provides otherwise, the Common Assessment and any Neighborhood Assessment shall be paid in advance on a quarterly basis. The Association shall, upon demand at any time, furnish to any Owner liable for any type of Assessment a certificate, in writing, signed by an officer of the Association, setting forth whether such Assessment has been paid in respect of any particular Lot. Such certificate shall be conclusive evidence that the assessment stated therein shall have been paid to the Association. The Association may require the advance payment of a reasonable processing fee for the issuance of such certificate.

9.04    Computation of Common Assessment.    It shall be the duty of the Board of Directors to prepare a budget annually covering the estimated Common

Expenses of the Association for the ensuing fiscal year. The budget may include a capital contribution for purposes of establishing a reserve fund. The Common Assessment levied against each Lot which is subject to the Common Assessment shall be computed by dividing the budgeted Common Expenses by the total number of Lots which are subject to Common Assessments plus the total number Lots reasonably anticipated to become subject to Common Assessments during the fiscal year. The Board of Directors shall cause a copy of the Common Expense budget and notice of the amount of the Common Assessment to be levied for the following year to be delivered to each Owner at least thirty (30) days prior to the beginning of the fiscal year. The budget and the amount of the Common Assessment shall be determined by the Board of Directors in their sole and absolute discretion. Notwithstanding the foregoing, in the event the Board fails for any reason to determine the budget for any year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the immediately preceding year shall continue; provided, however, that upon the adoption of a new budget, the same shall be deemed retroactive to the beginning of the then current budget year and each Owner shall pay the increase, if any, in the Common Assessment for the beginning of such year at the time the next installment is due.

9.05   Computation of Neighborhood Assessments. It shall be the duty of the Board of Directors annually to prepare a separate budget covering the estimated Neighborhood Expenses to be incurred by the Association for each Neighborhood on whose behalf Neighborhood Expenses are expected to be incurred for the ensuing fiscal year. The Board of Directors shall be entitled to set such budget only to the extent that this Declaration or a Supplemental Declaration specifically authorizes the Board of Directors to assess certain costs as a Neighborhood Assessment. Any Neighborhood may request that additional services or a higher level of services be provided by the Association, and in such case, any additional costs shall be added to the Neighborhood's budget. This budget may include a capital contribution establishing a reserve fund for repair and replacement of capital items within the Neighborhood, as appropriate. The Neighborhood Assessment levied against each Lot in that Neighborhood which is subject to the Neighborhood Assessment shall be computed by dividing the budgeted Neighborhood Expenses for that Neighborhood by the total number of Lots within such Neighborhood which are subject to the Neighborhood Assessments plus the total number of Lots in that Neighborhood reasonably anticipated to become subject to the Neighborhood Assessments during the fiscal year. The Board of Directors shall cause a copy of such budget and notice of the amount of the Neighborhood Assessment to be levied on each Lot for the coming year to be delivered to each Owner of a Lot in the benefitted Neighborhood at least thirty (30) days prior to the beginning of the fiscal year. In the event the Board of Directors fails for any reason to determine the budget for any year, then and until such time as a budget shall have been determined as provided herein, the budget in effect for the immediately preceding year shall continue.

BOOK 18915 PG 227

## 9.06  Special Assessments.

(a)  **As To All Members.**  The Board of Directors, upon the affirmative vote of a majority of votes of the Association and the consent of the Class "B" Member so long as the Class "B" Membership exists, may levy Special Assessments for capital improvements and repairs from time to time. No membership vote shall be required for Special Assessments due to budget shortfalls in any year.  Special Assessments pursuant to this paragraph shall be payable in such manner and at such times as determined by the Board of Directors, and may, if the Board of Directors so determines, be payable in installments extending beyond the fiscal year in which the Special Assessment is approved.

(b)  **Less Than All Members.**  Without a membership vote, the Association may levy a Special Assessment against any Member individually and against such Member's Lot to reimburse the Association for costs incurred in bringing a Member and the Lot or Unit into compliance with the provisions of the Declaration, any amendments thereto and the Articles, By-Laws, Community-Wide Standards or Rules and Regulations of the Association, which Special Assessment may be levied upon the vote of the Board of Directors after notice to the Member and an opportunity for a hearing.  The Association may also levy, without a membership vote, a Special Assessment against the Lots in any Neighborhood to reimburse the Association for costs incurred in bringing the Neighborhood into compliance with the provisions of this Declaration, any amendments thereto, any Supplemental Declaration, if applicable, and the Articles, By-Laws, Community-Wide Standards and Rules and Regulations of the Association, which Special Assessment may be levied upon the vote of the Board of Directors after notice to the Members from such Neighborhood and an opportunity for a hearing.  In the event the Association enters into a bulk rate cable television agreement for the Community, the Association shall specially assess all Lots for which a certificate of occupancy has been issued for cable television service.  For any Special Assessment levied for failure to comply with the Documents, the Association may add an administration charge equal to ten percent of such amount.

9.07  **Declarant's Obligation for Assessments.**  Beginning on the date of the recordation hereof, and continuing so long as Declarant owns one or more Lots, Declarant shall not pay Assessments on Lots which Declarant owns, but shall pay the difference, if any, between the amount of Assessments payable by Owners other than Declarant and the actual Common Expenses incurred by the Association for each Assessment period.  If Declarant determines not to pay the difference between the amount of Assessments payable by Owners other than Declarant and the actual Common Expenses, then Declarant shall pay Assessments for the Lots which Declarant owns.  Unless Declarant otherwise notifies the Board of Directors in writing at least sixty (60) days prior to the end of the fiscal year, Declarant shall be deemed to have elected to continue paying on the same basis as the preceding fiscal year.  Declarant's obligations hereunder may be satisfied in the form of a cash subsidy or by "in kind" contributions of services or materials, or a combination of the same.

24                    BOOK 18915 PG 228

9.08  Establishment of Lien.  Any and all Assessments, together with interest at a rate not to exceed the highest rate allowed by applicable usury law as computed from the date the delinquency first occurs, and such late charges and fines as may be established by the Board of Directors and costs and reasonable attorneys' fees may, upon compliance with applicable law, become a lien upon the Lot against which each Assessment is made and any other assets of the Owner.  Each Assessment, together with interest, late charges, costs, and reasonable attorneys' fees, shall also be the personal obligation of the Person who was the Owner of such Lot at the time the Assessment arose, and his or her grantee shall be jointly and severally liable for such portion thereof as may be due and payable at the time of conveyance.

The Association, acting on behalf of its Members, shall have the power to bid for the Lot or the other portions of the property so affected at a foreclosure sale and to acquire and hold, lease, mortgage, and convey the same.  During the period in which the Lot or the other property so affected is owned by the Association following foreclosure: (a) no right to vote shall be exercised on its behalf; (b) no Assessment shall be levied on it; and (c) each other Lot shall be charged, in addition to its usual Assessment, its equal pro rata share of the Assessment that would have been charged such Lot had it not been acquired by the Association.  Suit to recover a money judgment for unpaid Common Expenses and attorneys' fees shall be maintainable without foreclosing or waiving the lien securing the same.

9.09  Reserve Budget and Capital Contribution.  The Board of Directors may annually prepare a reserve budget to take into account the number and nature of replaceable assets, the expected life of each asset, and the expected repair or replacement cost.  The Board of Directors may set the required capital contribution in an amount sufficient to permit meeting the projected needs of the Association, as shown on the budget, with respect both to amount and timing by Assessments over the period of the budget.  The capital contribution required (if any) may be fixed by the Board of Directors and included within and distributed with the budget and Common Assessment.

9.10  Exempt Property.  Notwithstanding anything to the contrary herein, all Common Area, Exclusive Common Area, all property owned by Declarant, and all property dedicated by Declarant to utility companies or governmental authorities shall be exempt from payment of Common Assessments, Neighborhood Assessments, and Special Assessments.

### ARTICLE X
### MAINTENANCE

10.01  Association's Responsibility.  The Association shall maintain and keep in good repair the Areas of Common Responsibility, such maintenance to be funded as herein provided.  This maintenance shall include, but need not be limited to, maintenance, repair, and replacement of roadways, waterways, preserves, landscaping, flora, fauna, structures and improvements which form the Common Area, and such portions of any additional property included within

25

BOOK 18915 PG 229

Deed Book **39686** Pg    **40**
Filed and Recorded Mar-29-2005 02:48pm
**2005-0127469**
**Juanita Hicks**
Clerk of Superior Court
Fulton County, Georgia

——————————— [SPACE ABOVE RESERVED FOR RECORDING DATA]———————————————

After recording return to:
The Lueder Law Firm, LLC
2050 Marconi Drive, Suite 300
Alpharetta, Georgia 30005

Cross reference:
Deed Book 18915, Page 200

STATE OF GEORGIA

COUNTY OF FULTON

## SIXTEENTH SUPPLEMENTAL DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR WHITE COLUMNS AND AMENDED BYLAWS OF WHITE COLUMNS COMMUNITY ASSOCIATION, INC.

This Sixteenth Supplemental Declaration of Covenants, Conditions and Restrictions for White Columns and Amended Bylaws of White Columns Community Association Inc. is made this **29** day of March, 2005, by Crabapple White Columns Development, LLC, a Georgia limited liability company, f/k/a Eagle White Columns Development, LLC (hereafter referred to as "Declarant").

### W I T N E S S E T H :

WHEREAS, that certain Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns was recorded on November 1, 1994 in Deed Book 18915, Page 200 *et seq.* of the Fulton County, Georgia land records, as amended and supplemented as follows: First Supplementary Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns recorded on December 27, 1995 in Deed Book 20423, Page 231 *et seq.* of the Fulton County, Georgia land records; Second Supplementary Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns recorded on June 19, 1996 in Deed Book 21081, Page 254 *et seq.* of the Fulton County, Georgia land records; Third Supplementary Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns recorded on December 5, 1996 in Deed Book 21870, Page 350 *et seq.* of the Fulton County, Georgia land records; Fourth Supplementary Master Declaration of Protective Covenants, Conditions and Restrictions for White Columns recorded on April 9, 1997 in Deed Book 22428, Page 174 *et seq.* of the Fulton County, Georgia land records; Fifth Supplementary Master Declaration of Protective

may in its sole and absolute discretion at any time and from time to time amend and supplement the Declaration;

WHEREAS, pursuant to Article XII, Section 5 of the Bylaws, the Declarant, prior to the Turnover Date defined in Article I, Section 1.39 of the Declaration, may in its sole and absolute discretion at any time and from time to time amend and supplement the Bylaws;

WHEREAS, as of the date of this Sixteenth Supplemental Declaration of Covenants, Conditions and Restrictions for White Columns and Amended Bylaws of White Columns Community Association Inc, the Turnover Date has not yet occurred, and as a result, the Declarant retains the right to amend and supplement the Declaration and Bylaws; and

NOW, THEREFORE, the Declaration and Bylaws are hereby amended and supplemented as follows:

1.

Article I, Section 1.08 of the Declaration is amended by striking same in its entirety and substituting the following therefor:

1.08    "Bylaws" (also referred to as "By-Laws") shall mean and refer to the Bylaws of the Association that are attached as Exhibit "A" to this Sixteenth Supplemental Declaration of Covenants, Conditions and Restrictions for White Columns and Amended Bylaws of White Columns Community Association Inc, as same may be amended from time to time.

2.

Article I of the Declaration is amended by adding thereto the following as Section 1.41:

1.41    "Georgia Property Owners' Association Act" or "Act" shall mean the Georgia Property Owners' Association Act, O.C.G.A. § 44-3-220, et seq., as the same may be supplemented, amended or modified. White Columns is a residential property owners development which is hereby submitted to the Act. The Declaration and all property subject thereto are accordingly submitted to the Act.

3.

Article II, Section 2.04 of the Declaration is amended by striking the last sentence therefrom and replacing same with the following:

Following the Turnover Date, the Association may subject additional property to the provisions of the Declaration upon (a) the

may in its sole and absolute discretion at any time and from time to time amend and supplement the Declaration;

WHEREAS, pursuant to Article XII, Section 5 of the Bylaws, the Declarant, prior to the Turnover Date defined in Article I, Section 1.39 of the Declaration, may in its sole and absolute discretion at any time and from time to time amend and supplement the Bylaws;

WHEREAS, as of the date of this Sixteenth Supplemental Declaration of Covenants, Conditions and Restrictions for White Columns and Amended Bylaws of White Columns Community Association Inc, the Turnover Date has not yet occurred, and as a result, the Declarant retains the right to amend and supplement the Declaration and Bylaws; and

NOW, THEREFORE, the Declaration and Bylaws are hereby amended and supplemented as follows:

1.

Article I, Section 1.08 of the Declaration is amended by striking same in its entirety and substituting the following therefor:

1.08  "Bylaws" (also referred to as "By-Laws") shall mean and refer to the Bylaws of the Association that are attached as Exhibit "A" to this Sixteenth Supplemental Declaration of Covenants, Conditions and Restrictions for White Columns and Amended Bylaws of White Columns Community Association Inc, as same may be amended from time to time.

2.

Article I of the Declaration is amended by adding thereto the following as Section 1.41:

1.41  "Georgia Property Owners' Association Act" or "Act" shall mean the Georgia Property Owners' Association Act, O.C.G.A. § 44-3-220, et seq., as the same may be supplemented, amended or modified. White Columns is a residential property owners development which is hereby submitted to the Act. The Declaration and all property subject thereto are accordingly submitted to the Act.

3.

Article II, Section 2.04 of the Declaration is amended by striking the last sentence therefrom and replacing same with the following:

Following the Turnover Date, the Association may subject additional property to the provisions of the Declaration upon (a) the

-3-

8.03    **Turnover Date**. The Turnover Date shall be March 29, 2005.

7.

Article IX, Section 9.02 of the Declaration is amended by striking same in its entirety and substituting the following therefor:

9.02    **Creation of Assessment and Creation of Lien**.  There are hereby created Assessments of the Association as the Board of Directors may authorize from time to time as set forth within this Article IX.  There shall be three (3) types of assessments.

(a)    **Common Assessments**.    Common Assessments shall be levied equally on all Lots.

(b)    **Neighborhood Assessments**.    Neighborhood Assessments shall be levied equally on all Lots within the Neighborhood for the whose benefit Neighborhood Expenses are incurred as provided in Section 9.05 of this Article.

(c)    **Special Assessments**.  Special Assessments shall be levied as provided in Section 9.06 of this Article.

All such Assessments, together with charges, interest, costs, and reasonable attorney's fees actually incurred, shall be a charge on the Lot and shall be a continuing lien upon the Lot against which each Assessment is made.  The lien provided for herein shall have priority as provided in the Act.  Such amounts shall also be the personal obligation of the person who was the Owner of such Lot at the time when the Assessment fell due. Each Owner and his or her grantee shall be jointly and severally liable for all Assessments and charges due and payable at the time of any conveyance.  The Association, in the Board's discretion, may, but shall not be obligated to, record a notice of such lien in the Fulton County, Georgia land records evidencing the lien created under the Georgia Property Owners' Association Act and this Declaration.

8.

Article IX, Section 9.06(b) of the Declaration is amended by adding thereto the following:

The Board of Directors shall have the power to levy Specific Special Assessments pursuant to Section 44-3-225(a) of the Act.  Any expense of the Association occasioned by the conduct of less than all of those entitled to occupy all of the Lots or by the licensees or invitees of any Lot or Lots may be specially assessed against such Lot(s), including attorney's fees

-5-

Deed Book 39686 Pg 45

incurred by the Association in enforcing the Declaration, Bylaws or Association rules.

9.

Article IX, Section 9.08 of the Declaration is amended by striking same in its entirety and substituting the following therefor:

9.08    Delinquent Assessments.   All Assessments and charges not paid on or before the due date for such Assessment shall be delinquent, and the Owner shall be in default.

(i)    If any Assessment or installment of an Assessment is not paid in full within ten (10) days of the due date, a late charge equal to the greater of ten ($10.00) dollars or ten (10%) percent of the amount not paid, or such higher amounts as may be authorized by the Act, may be imposed without further notice or warning to the delinquent Owner, and interest at the rate of ten (10%) percent per annum, or such higher rate as permitted by Act, shall accrue from the due date.

(ii)    If partial payment of an Assessment or other charge is made, the amount received may be applied by the Board, in respective order, to post-judgment attorney's fees, if any, costs and expenses, then to costs and attorney's fees not reduced to a judgment, then to interest, then to late charges, then to delinquent Assessments and then to current Assessments.

(iii)    If an Assessment or charge, or any part thereof, due from an Owner remains delinquent and unpaid for more than fifteen (15) days from the date due, and if the Board of Directors has permitted the Assessment to be paid in quarterly or semi-annual installments, then a notice of delinquency may be given to that Owner stating that if the unpaid Assessment or charge remains delinquent for more than ten (10) days from the date of the notice of delinquency, the Board may accelerate and declare immediately due all of that owner's unpaid installments of the Assessment. If the Owner fails to pay all amounts currently due within ten (10) days of the date of the notice of delinquency, the Board may then accelerate and declare immediately due all installments of the Assessment without any further notice being given to the delinquent Owner.

(iv)    If an Assessment or other charge, or any part thereof, remains unpaid more than thirty (30) days after the due date, the Association, acting through the Board, may institute suit to collect all amounts due pursuant to the provisions of the Declaration, the Bylaws, and Georgia law, including reasonable attorney's fees actually incurred (and including post-judgment attorney's fees, if any).

08/21/2018  9:06 AM

Resident Transaction Report
WHITE COLUMNS - GATED
Dates 01/01/1900 to 08/21/2018

Page: 1

W8-0014  GOLF VISTA COURT
MILTON GA  30004

| Unit | Phase | Owner | Type | Date | CC | Description | Check | Amount | Balance |
|------|-------|-------|------|------|----|-------------|-------|--------|---------|
| 0723 | 03 | JOSEPH KOZAK* | App# | 180307 | | | Beg Bal | | 0.00 |
| | | MARILYN KOZAK* | Pay | 02/09/2017 | | PAYMENT | 252 | -600.00 | -600.00 |
| | | 723 GOLF VISTA COURT | Pay | 03/14/2017 | | JOSEPH KOZAK | 258 | -400.00 | -1,000.00 |
| | | MILTON GA 30004 | Chg | 04/01/2017 | Q1 | ASSESS QRT JAN | | 683.25 | -316.75 |
| | | | Chg | 04/01/2017 | GX | COMMON OPERATING | | 134.25 | -182.50 |
| | | | Chg | 06/27/2017 | 05 | LUEDER 060517 303553 | | 46.00 | -136.50 |
| | | | Chg | 07/01/2017 | GX | COMMON OPERATING | | 134.25 | -2.25 |
| | | | Chg | 07/01/2017 | Q1 | ASSESS QRT JAN | | 683.25 | 681.00 |
| | | | Pay | 07/12/2017 | | PAYMENT | 273 | -500.00 | 181.00 |
| | | | Chg | 07/17/2017 | 04 | INTEREST | | 1.50 | 182.50 |
| | | | Chg | 08/22/2017 | 04 | INTEREST | | 1.50 | 184.00 |
| | | | Cr | 08/30/2017 | Q1 | WAIVE LEGAL FEE | | -46.00 | 138.00 |
| | | | Chg | 09/18/2017 | 04 | INTEREST | | 1.12 | 139.12 |
| | | | Chg | 10/01/2017 | GX | COMMON OPERATING | | 134.25 | 273.37 |
| | | | Chg | 10/01/2017 | Q1 | ASSESS QRT JAN | | 683.25 | 956.62 |
| | | | Chg | 10/20/2017 | 04 | INTEREST | | 7.91 | 964.53 |
| | | | Chg | 11/17/2017 | 04 | INTEREST | | 7.91 | 972.44 |
| | | | Chg | 12/19/2017 | 04 | INTEREST | | 7.91 | 980.35 |
| | | | Chg | 01/01/2018 | GX | COMMON OPERATING | | 134.25 | 1,114.60 |
| | | | Chg | 01/01/2018 | Q1 | ASSESS QRT JAN | | 683.25 | 1,797.85 |
| | | | Chg | 02/28/2018 | 04 | INTEREST | | 14.75 | 1,812.60 |
| | | | Pay | 03/06/2018 | | PAYMENT | 316 | -1,800.00 | 12.60 |
| | | | Chg | 04/01/2018 | GX | COMMON OPERATING | | 134.25 | 146.85 |
| | | | Chg | 04/01/2018 | Q1 | ASSESS QRT JAN | | 683.25 | 830.10 |
| | | | Chg | 04/17/2018 | 04 | INTEREST | | 6.81 | 836.91 |
| | | | Chg | 05/17/2018 | 04 | INTEREST | | 6.81 | 843.72 |
| | | | Chg | 06/19/2018 | 04 | INTEREST | | 6.81 | 850.53 |
| | | | Chg | 07/01/2018 | GX | COMMON OPERATING | | 134.25 | 984.78 |
| | | | Chg | 07/01/2018 | Q1 | ASSESS QRT JAN | | 683.25 | 1,668.03 |
| | | | Cr | 07/12/2018 | 04 | Move Out Credit | | -6.81 | 1,661.22 |
| | | | Cr | 07/12/2018 | GX | Move Out Credit | | -134.25 | 1,526.97 |
| | | | Cr | 07/12/2018 | Q1 | Move Out Credit | | -683.25 | 843.72 |
| | | | | | | | End Bal | | 843.72 |





## Account Statement for JOSEPH KOZAK

| Account: | 207503 | Date: | 08/21/2018 |
| E-mail Address: | jkozak319@yahoo.com | Home Phone: | |
| Association: | White Columns Community Association - Gated | Work Phone: | |

| Home Address: | 723 GOLF VISTA COURT MILTON, GA 30004 |
| Mailing Address: | 723 GOLF VISTA COURT MILTON, GA 30004 |
| Note: | Post-Petition Bankruptcy Account – This account has been split as of the petition date. For a pre-petition balance, please contact the management company. |

## Transaction History

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 07/11/2018 | Balance Forward | 0.00 | 0.00 | 0.00 |
| 07/12/2018 | COMMON OPERATING | 134.25 | 0.00 | 134.25 |
| 07/12/2018 | ASSESS QRT JAN | 683.25 | 0.00 | 817.50 |

**Balance Due:** 817.50

POST



EXHIBIT " B-2 "

# Lueder, Larkin & Hunter LLC

5900 Windward Parkway
Suite 390
Alpharetta, GA 30005
Ph:   770-685-7000      Fax:   770-685-7003

August 22, 2018

White Columns Community Association, Inc.
c/o Heritage Property Management Services, Attn: Deborah Heairlston
(R)
500 Sugar Mill Road, Building B, Suite 200
Atlanta GA, 30350

## LEGAL SERVICES RENDERED

| DATE | ID | DESCRIPTION | HRS | RATE | AMT |
|------|-----|-------------|-----|------|-----|
| **Matter:** | **137-1203-5** | | | | |
| **RE:** | | **Kozak, Joseph & Marilyn: Bankruptcy Ch. 7 (filed:  06-16-18, Joseph ONLY)** | | | |
| 07/05/2018 | KA | Prepared and filed Notice of Appearance in pending bankruptcy case to ensure receipt of all pertinent documents. | 0.30 | 130.00 | 39.00 |
| 07/05/2018 | KA | ($75 flat rate)  Obtained bankruptcy information from online Bankruptcy Court filings and entered into collection software. | | | 75.00 |
| 07/05/2018 | KA | ($105 flat fee)  Prepared and sent notice to client regarding Chapter 7 Bankruptcy filing and effect of bankruptcy on Association and its claim; sent notice to client of existence and explanation of Automatic Stay; sent notice to client regarding requirement to separate account into pre-petition and post-petition accounts. | | | 105.00 |
| 07/09/2018 | DEM | Reviewed documents and pleadings filed in case to determine claim status. | 0.20 | 230.00 | 46.00 |
| 07/09/2018 | DEM | Reviewed file, letters, and pleadings regarding the bankruptcy case. | 0.30 | 230.00 | 69.00 |
| 07/27/2018 | DEM | Received and reviewed Interim Order Extending Automatic Stay.  (Joseph) | 0.10 | 230.00 | 23.00 |
| 07/30/2018 | KA | Requested all pre-petition ledgers from Heritage. | 0.10 | 130.00 | 13.00 |
| 07/31/2018 | DEM | Reviewed ledgers; updated notes regarding pre-petition status. | 0.30 | 230.00 | 69.00 |
| 08/01/2018 | DEM | Emailed memo to property manager advising of proposed collection action regarding account. | 0.30 | 230.00 | 69.00 |
| 08/22/2018 | DEM | Reviewed ledgers to determine pre-petition and post-petition lien value; calculated amounts owed; prepared and filed Motion for Relief from Stay, Notice of Hearing, and Certificate of Service to obtain permission from Bankruptcy Court to commence foreclosure litigation. | 2.00 | 230.00 | 460.00 |

## COSTS

| | | |
|---|---|---|
| **Total Attorneys' Fees** | | **$968.00** |
| **Total Costs** | | ~~$0.00~~ |

 EXHIBIT " C "

 MFR FEE

 #181



| Total Attorneys' Fees and Costs | $968.00 |

$1149.00

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JOSEPH M. KOZAK, | ) | CASE NO. 18-60076-PMB |
| | ) | |
|     Debtor. | ) | JUDGE PAUL BAISIER |
| | ) | |

---

| | | |
|---|---|---|
| | ) | |
| WHITE COLUMNS COMMUNITY | ) | |
| ASSOCIATION, INC., | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
| v. | ) | <u>CONTESTED MATTER</u> |
| | ) | |
| JOSEPH M. KOZAK and | ) | |
| ROBERT TRAUNER (as Trustee), | ) | |
| | ) | |
|     Respondents. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing *Motion for Relief from Stay* and *Notice of Hearing* upon the opposing parties in this matter by depositing a copy of the same in the United States mail, with adequate postage thereon, addressed as follows:

Joseph M. Kozak
723 Golf Vista Court
Alpharetta, GA  30004

William Anderson Rountree
c/o Rountree & Leitman, LLC
2800 North Druid Hills Road, Bldg. B, Suite 100
Atlanta, GA  30329

Robert Trauner, Chapter 7 Trustee
P.O. Box 421025
Atlanta, GA  30342

R. Jeneane Treace
c/o Office of U.S. Trustee
75 Ted Turner Drive, S.W., Suite 362
Atlanta, GA  30303

      Respectfully submitted, this 22nd day of August, 2018.

                    LUEDER, LARKIN & HUNTER, LLC


            By:     __/s/  Daniel E. Melchi_____
                    Daniel E. Melchi
                    Georgia Bar No. 501187
                    Attorneys for the Movant

5900 Windward Parkway, Suite 390
Alpharetta, Georgia 30005
T:  (770) 685-7000
F:  (770) 685-7002
E:  dmelchi@luederlaw.com